# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

FILED MAR 10 2014 PATRICK KEANEY Clerk, U.S. District Court By_____ Deputy Clerk

VICTOR CORNELL MILLER,  )
                            )
          Plaintiff,   )
                            )
v.                            )   No. 11-352-RAW-SPS
                            )
WADE SCOTT, et al.,       )
                            )
          Defendants. )

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss or for summary judgment and the court's own motion to consider dismissal of the case as frivolous under 28 U.S.C. § 1915. The court has before it for consideration plaintiff's second amended complaint (Docket No. 82), the defendants' motion (Docket No. 99), a special report and supplements (Docket Nos. 27, 98), prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), and plaintiff's objections to the special report (Docket Nos. 34, 101).

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking monetary and injunctive relief for alleged constitutional violations during his incarceration at that facility. The following OSP officials are defendants: Chaplain Wade Scott, Food Service Superintendent Robert Compton, Food Service Supervisor D. D. Johns, Warden's Assistant Designee Terry Crenshaw, Case Manager Chad Brown, Unit Manager William Taylor, Former Warden Randall Workman, Health Services Administrator Chester Mason, and Security Officers Beatrice Glover, Jacqulyn Barnett, Keith Sherwood, Jim Hobbs, Cleveland Sweet, and Anthony Roberts. Plaintiff also has named Former DOC Director Justin Jones and DOC

Administrative Program Officer Kerry Minyard.[1,2]

Plaintiff alleges in Count I of his lengthy and repetitive second amended complaint that on August 1, 2011, the Islamic month of Ramadan commenced, but he did not receive a morning meal prior to daybreak, as required by his Islamic religion. He claims he spoke with several prison officials about the matter and was advised that all Ramadan meals would be delivered to the units with the regular food distribution. Plaintiff then submitted a Request to Staff (RTS) to Defendant Chaplain Scott in another attempt to remedy the problem. On August 2, 2011, plaintiff spoke again with several prison officials without result. On this same date the chaplain responded to the RTS, advising his office had reissued a previous memorandum to all essential facility heads concerning the beginning of Ramadan.

On August 5, 2011, after receiving his morning meal past daybreak for the previous three days, plaintiff filed an emergency grievance to the warden. On that same date plaintiff's case manager placed a conference call to the chaplain, and they discussed the possibility of giving plaintiff a sack meal in the evening to be eaten before daybreak. The chaplain agreed to present this alternative to food services. On August 6 through August 8, plaintiff again did not receive his morning meal before daybreak. The grievance was returned unanswered on August 8 because of an incorrect date of submission and too many attachments, although plaintiff contends the date was correct. On August 9, 2011, plaintiff received the morning meal approximately seven minutes prior to daybreak. On that date he also corrected the grievance and resubmitted it to the warden, and he sent a follow-up RTS to the food services superintendent, requesting immediate rectification of the problem. He alleges the resubmitted grievance was not answered. The answer to the follow-up RTS stated

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

[2] Defendants Glover, Barnett, Hobbs, and Roberts have not been served.

that "the issue has already been addressed."

Plaintiff alleges that on August 18, 2011, he received no breakfast, so he submitted a RTS to the warden about his resubmitted grievance. Plaintiff submitted another RTS to the warden on August 29, 2011, regarding the warden's designee's abuse of the grievance process, marking it "Eyes Only." The warden allegedly failed to take action on these matters, answer the grievances, or supervise his subordinates.

Plaintiff asserts that on August 25 he filed an emergency appellate grievance to the DOC Administrative Review Authority, regarding the lack of an answer to the resubmitted grievance, No. 11-071. He alleges the Director did not answer, but he provides no support for that allegation. Plaintiff contends his grievances were denied because certain defendants conspired to prevent him from exhausting his administrative remedies and to deprive him of his civil rights.

Plaintiff further alleges he received his morning Ramadan meal with adequate time to eat before daybreak only twice. On the remaining 28 days, he allegedly had to choose between eating breakfast in violation of his religion or not eating and becoming violently ill. If he did not eat the meal, he had to keep it in his cell until sunset and then combine the non-perishable food from breakfast with the evening meal, so he would have food to eat before daybreak the next day. He complains that he, therefore, "was unable to enjoy a proper fast or achieve the full spiritual experience of Ramadan." (Docket No. 82 at 14-15).

Plaintiff claims that on the days he had no food saved from previous meals, his migraine symptoms were exacerbated, but he could not take medication because of the prohibition of food and drink during daylight hours of fasting. His symptoms included extended periods of nausea, chills, fever, blurred vision, severe head pain, and total incapacitation. He also experienced hunger and physical weakness from the deprivation of a morning meal, and his Ramadan experience was diminished by the need to constantly attempt to resolve the issue of his morning meal.

In Count II plaintiff alleges prison officials violated his equal protection and due

3

process rights by their practice of accommodating special holiday meals and religious literature for Christian holidays, and by allowing Christian inmates to receive counseling and fellowship with Christians who visit the facility each week. There also are Jewish representatives who visit with Jewish inmates, but no Muslim representatives are allowed to visit the Muslim inmates. In addition, Christian inmates receive Bibles and other literature, but Muslim inmates do not receive Qurans or Islamic literature. He claims Christian inmates are not required to offer proof of their beliefs, but Muslim inmates are required to undergo a rigorous process before they are allowed to receive their religious diet. While Ramadan is a recognized holiday, OSP officials allegedly do not accommodate Muslim holidays to the same degree as they accommodate Christian holidays.

Plaintiff claims in Count III that prison officials violated the constitutional prohibition against cruel and unusual punishment by their deliberate indifference to the exacerbation of his migraine symptoms. The failure to timely deliver his morning meals resulted in his becoming violently ill.

In Count IV plaintiff alleges prison officials conspired to deny his civil rights to free speech, to petition the government for redress of grievances, to due process of laws, and to be free of involuntary servitude. He bases this claim on an alleged conspiracy on August 5, 2011, between Defendants Terry Crenshaw and Chad Brown to contrive false and inapplicable reasons to deny plaintiff's grievance and return it unanswered. He further asserts numerous other defendants provided false sworn statements in the special report to assist, aid, and abet Crenshaw and Brown in their attempt to stage a cover-up of civil rights and other violations.

Finally, Count V concerns alleged violations of plaintiff's rights regarding (1) the practice of his religion, (2) freedom of speech, (3) petitioning the government for redress of grievances, (4) due process of law, (5) excessive bail, (6) cruel and unusual punishment, (7) involuntary servitude, and (8) equal protection. This ground for relief is based on the chaplain's alleged denial of a Halal or Kosher diet for plaintiff, because plaintiff's canteen

4

purchases indicated he had not "truly held" to his beliefs.

The defendants have filed a motion to dismiss or for summary judgment, alleging plaintiff has failed to exhaust the administrative remedies for his claims in Counts I-IV. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds, Jones v. Bock*, 549 U.S. 199 (2007).

Pursuant to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a RTS within seven calendar days of the incident. If there has been no response to the RTS within 30 days of submission, the offender may file a grievance to the reviewing authority with evidence that the RTS was filed but not answered.

If the RTS is answered but not resolved, the offender then may file a formal grievance with the facility head or facility correctional health services administrator. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. Throughout the process, if the offender does not receive a response from the appropriate level within the designated length of time, he has the option of filing a grievance to the next level, indicating only that he has not yet received a

response from the appropriate authority. The DOC administrative process is exhausted only after all of these steps have been taken. *See* DOC Policy OP-090124 at http://www.ok.gov/doc/documents/op090124.pdf.

**Count I**

According to the special report, on July 31, 2011, Defendant Chaplain Scott circulated a memo to OSP staff advising which prisoners would be participating in Ramadan. (Docket No. 27-7 at 7). The memo explained that only those prisoners who had been carefully observing the non-pork diet should be allowed to participate, and any inmate observed breaking the fast would be removed from the Ramadan list. The memo further explained that the morning Ramadan meal should be served before daybreak and before the regular breakfast meals are served to ensure the Ramadan meals could be eaten before sunrise, and the evening Ramadan meal should be served after sunset.

The next day, August 1, 2011, plaintiff sent Chaplain Scott a Request to Staff, stating he did not receive his morning meal before daybreak, and the Defendant Johns, the Food Service Supervisor, advised that all Ramadan meals would be sent to the units with the regular food carts. (Docket No. 27-7 at 8). M. Sullivan responded on August 2, 2011, stating that a copy of the chaplain's Ramadan memo would be forwarded to Food Services. *Id.*

Plaintiff next submitted an "emergency grievance," No. 11-071, to the warden's office on August 5. (Docket No. 27-2 at 4). It was returned unanswered, because it violated OP-090124 with too many attachments and the wrong submission date. *Id.* at 3. Plaintiff was given ten calendar days from the date of receipt to submit a proper grievance. *Id.* According to the affidavit by Defendant Kerry Minyard, Administrative Programs Officer with the DOC Administrative Review Unit, there is no record of plaintiff's submitting any grievances or grievance appeals to his office. (Docket No. 27-6 at 2).

On August 22, 2011, plaintiff submitted another "emergency grievance," No. 11-082, to the reviewing authority, requesting to have his morning meals served 30 minutes before

daybreak. (Docket No. 27-3 at 4). This grievance also was returned to plaintiff, because (1) he failed to attach a Request to Staff, (2) the grievance raised more than one issue, and (3) his issue did not constitute an emergency. (Docket No. 27-3 at 3). He again was given ten calendar days to correct the grievance and resubmit it, but the records show it was not resubmitted. *Id.*

The record also shows plaintiff did not submit any proper grievances regarding the issues in Count I. Furthermore, plaintiff did not file any grievance appeals to the Administrative Review Authority, the final step in exhausting his administrative remedies. To the extent plaintiff makes unsupported claims that some of the documents he submitted in his attempt to exhaust his administrative remedies went unanswered, the court finds these assertions are conclusory. This claim has not been exhausted.

**Counts II and IV**

Plaintiff makes no allegations that he even began the process of exhausting his administrative remedies for the claims in Count II (equal protection and due process with respect to religious observances) or Count IV (conspiracy to deny plaintiff's civil rights). As stated above, the special report indicated no grievances were submitted on these issues. (Docket No. 27-2 at 1-2, Docket No. 27-3 at 1-5). Therefore, these claims cannot be considered.

**Count III**

Plaintiff alleges in Count III that the failure of prison officials to deliver his morning meals before sunrise often caused him to forego consuming his breakfast for the day, causing exacerbation of his migraine headaches. The record shows that his only attempt to contact OSP staff about his symptoms was a statement in an August 3, 2011, RTS to Defendant Taylor, but Taylor did not respond. As set forth above, plaintiff could have filed a grievance to the reviewing authority, indicating his RTS had not been answered. Therefore, this claim also is unexhausted and barred.

## Count V

Plaintiff alleges he and other Muslim inmates at OSP have been subjected to different treatment from other religious groups, in particular the Christian and Jewish inmates. He claims that on October 3, 2011, he submitted an informal request to Chaplain Scott, requesting approval for a Halal religious diet, as provided in prison policy. After receiving no response from the warden, plaintiff submitted a RTS combined with a formal Special/Religious Diet Request Form to the chaplain. The RTS was denied, because Plaintiff had requested either a Halal or a Kosher diet, and the prison policy allowed only one type of religious diet at a time. (Docket No. 27-7 at 2).

On January 4, 2012, plaintiff submitted a third request to the chaplain, seeking approval of a religious diet. Plaintiff maintains Muslims are allowed to consume Halal or Kosher food. Scott replied on January 18 that he would monitor plaintiff's canteen purchases for 30 days and advise plaintiff if a religious diet was approved. On February 8, 2012, Scott allegedly sent plaintiff a memo stating he had determined that plaintiff did not have "truly held" beliefs, based on his canteen purchases from December 13, 2011, to February 8, 2012. Plaintiff was instructed to explain within ten days why he was a sincere adherent.

On February 9, 2012, plaintiff submitted a fourth RTS, requesting approval for a religious diet, and the chaplain responded with "I am working on this for you. I will give you my answer before March 9, 2012." On March 12, 2012, plaintiff filed a formal grievance to the warden with "privileged" written on the front of the envelope addressed to the warden. After no response was received, plaintiff submitted a grievance to the Administrative Review Authority on April 13, 2012. Plaintiff contends the administrative process was rendered unavailable to him, and the defendants do not dispute his position on exhaustion.

Having moved for summary judgment in their favor on Count V, the movants are required to show the absence of a genuine issue of material fact and that the movants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

A party asserting that a fact cannot be or is genuinely disputed must support

the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986). Plaintiff, as "the nonmoving party may not rest on [his] pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics Int'l. v. First Affiliated Sec., Inc.*, 912 F.2d 1238 (10th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In this regard, all evidence of the nonmoving party is deemed true, and all reasonable inferences are drawn in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 114, 158-59 (1970)). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. With these standards in mind, the court turns to the merits of the defendants' motion.

The First Amendment does not preclude prisons from restricting inmates' religious practices, so long as "prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs." *Wares v. Simmons*, 392 F.3d 1141, 1143 (10th Cir. 2004) (citing *Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003)). An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir.1991). "A

plaintiff in an equal protection action has the burden of demonstrating discriminatory intent" and must "prove that a discriminatory purpose was a motivating factor." *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir.1988) (citations omitted). "So, to survive summary judgment, the plaintiff must go beyond [his] pleadings and show that [he] has evidence of specific facts" that demonstrate the defendants intentionally prevented him from fully practicing his religion, when other religious groups did not such restrictions. *See id.* "[A]fter an act of intentional discrimination against a particular group is identified either by presumption or evidence and inference, courts ask whether the state's intentional decision to discriminate can be justified by reference to some upright government purpose. *SECSYS, LLC v. Virgil*, 666 F.3d 678, 686 (10th Cir. 2012).

Chaplain Scott alleges by affidavit that he answered and returned plaintiff's RTS. (Docket No. 98-4 at 2). According to the special report, DOC has a Religious Services policy, OP-030112, because it recognizes that offenders "retain the right to choose their religious beliefs and to practice their religion." (Docket No. 99-3 at 1). DOC, however, "maintain[s] a neutral position relative to all religious beliefs." *Id.* The policy expressly addresses religious restricted meals:

> 1. All religious restricted meals will be offered through a common pork-free or meat-free meal; Kosher or Halal diet. An offender who wishes to receive one of these diets for religious reasons must submit a "Special/Religious Diet Request Form" . . . to the facility food service supervisor. Offenders from any faith group may request a pork-free or meat-free diet.
>
> 2. The food service supervisor will forward all Kosher and Halal diet requests to the facility chaplain for review. The chaplain will verify the offender's religious faith and that the offender's religion mandates a Kosher or Halal diet. The Kosher or Halal diet will be provided only to offenders who demonstrate their religious faith mandates compliance with a Kosher or Halal diet. The Religious Services Unit will maintain a list of "Religions Authorized to Receive a Kosher or Halal Diet" . . . . Rules for those receiving a Kosher or Halal diet and the consequences for violation of the rules are included on the "Special/Religious Diet Request Form" . . . .
>
> 3. Protocols for preparation and serving of either the Kosher or Halal menu will be in accordance with OP-070202, Attachment A entitled "Kosher Menu Preparation and Serving Protocols" and OP-070202, Attachment B

entitled "Halal Menu Preparation and Serving Protocols."

(Docket No. 99-3 at 8). Foods with a verifiable religious significance may be donated by outside religious organizations or purchased by the inmate from an authorized vendor. *Id.*

Furthermore, the special report indicates that all offenders have access to religious instruction and counseling by approved volunteers, unless restricted for security or safety concerns. *Id.* at 3. This provision, of course, presumes there are volunteers who will visit. Defendant Scott has set aside time on Fridays from noon to 4:00 p.m. for Muslim practitioners to visit OSP and speak with Muslim inmates, but apparently no volunteers have used that opportunity. (Docket No. 98-4 at 4).

Because prison officials may not actively promote religion, DOC cannot purchase religious artifacts for the inmates. This prohibition includes copies of the Bible or Quran. (Docket No. 99-3 at 10). *Id.* at 9-10). Inmates may purchase approved religious items from authorized vendors, in accordance with the policy. *Id.* at 12.

After careful review the court finds the defendants have shown there is an absence of a genuine issue of material fact regarding plaintiff's allegations that he was treated differently because of any suspect classification, or alternatively, that he was treated differently than those similarly situated without regard to a legitimate penological purpose. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). The court further finds the allegations in Count V are frivolous, and the dismissal of Count V should count as a strike, pursuant to 28 U.S.C. § 1915(g).

**Injunctive Relief**

Plaintiff also seeks injunctive relief directing the DOC Director and the OSP Warden to modify the current Offender Grievance Policy, OP-090124, "to include provisions for the implementation and enforcement of a more comprehensive tracking systems [sic] which allows for the accountability of formally submitted RTSs and grievances at every level of the procedure, including the very onset." (Docket No. 82 at 37). "This will serve to eliminate procedural due process violations and grievance receiption [sic] deniability as in the current

policy." *Id.*

> The PLRA states that no prospective relief shall issue with respect to prison conditions unless it is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation. 18 U.S.C. § 3626(a). When determining whether these requirements are met, courts must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system." *Ibid.*

*Brown v. Plata*, ___ U.S. ___, 131 S.Ct. 1910, 1939 (2011).

Here, plaintiff wants the DOC to overhaul the current grievance policy so all Requests to Staff and grievances can be tracked better. The court finds plaintiff's claim of grievances going unanswered throughout the system are conclusory, and he has not shown his request for injunctive relief complies with the requirements of 18 U.S.C. § 3626.

**ACCORDINGLY,** the defendants' motion to dismiss is granted with respect to Counts I, II, III, and IV, and Counts I, II, II, and IV are DISMISSED WITHOUT PREJUDICE for failure to exhaust available administrative remedies, pursuant to 42 U.S.C. § 1997e(a). Count V is DISMISSED WITH PREJUDICE as frivolous, and the dismissal of Count V shall count as a STRIKE, pursuant to 28 U.S.C. § 1915(g). Plaintiff's request for injunctive relief and all remaining pending motions also are DENIED.

**IT IS SO ORDERED** this 10th day of March 2014.

RONALD A. WHITE
**UNITED STATES DISTRICT JUDGE**